# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| NAVBLAZER, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No.  6:20-cv-00085-ADA<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE
## TO THE NORTHERN DISTRICT OF CALIFORNIA

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 2

III.    LEGAL STANDARD........................................................................................... 3

IV.     THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE
        CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT............ 4

        A.    This Case Could Have Been Brought In The Northern District ........................... 4

        B.    The Private Interest Factors Favor Transfer ........................................................ 4

              1.    Relevant Sources of Proof Are In The Northern District Of
                    California .................................................................................................. 4

              2.    The Availability of Compulsory Process Strongly Favors Transfer........... 7

              3.    Convenience of Both Party and Non-Party Witnesses Favors
                    Transfer ..................................................................................................... 7

              4.    Other Practical Problems Associated with Trial of This Case Are
                    Neutral..................................................................................................... 10

        C.    The Public Interest Factors Favor Transfer ...................................................... 12

              1.    California Has A Strong Local Interest In The Accused
                    Functionalities........................................................................................ 12

              2.    Administrative Difficulties Flowing From Court Congestion Are
                    Neutral And Should Be Given Little Weight............................................ 13

              3.    The Remaining Public-Interest Factors Are Neutral ................................ 15

V.      CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ....................................................................... 7

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
  No. 6:13-CV-362, 2014 WL 10748106 (W.D. Tex. June 11, 2014) ......................... 5

*Am. GNC Corp. v. GoPro, Inc.*,
  2018 WL 6074395 (S.D. Cal. Nov. 6, 2018) ........................................................... 13

*City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
  508 F. App'x 293 (5th Cir. 2013) .............................................................................. 6

*DataQuill, Ltd. v. Apple Inc.*,
  2014 WL 2722201 (W.D. Tex. June 13, 2014) ........................................................ 15

*Gemalto S.A. v. CPI Card Grp. Inc.*,
  2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ...................................................... 12

*GeoTag, Inc. v. Starbucks Corp.*,
  2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ............................................................ 13

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ........................................................................... 9, 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...................................................................... *passim*

*In re Google Inc.*,
  2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ............................................................ 11

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .......................................................................... 7, 13

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) .............................................................................. 15

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ................................................................................ 3

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ................................................................................ 4

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .......................................................................... *passim*

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................................ *passim*

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010) ..................................................................... 11, 12

*ORD Structure Innovations, LLC v. Oracle Corp.*,
    2011 WL 4435667 (N.D. Ill. Sept. 22, 2011) .......................................................... 13

*Parity Networks, LLC v. Juniper Networks, Inc.*,
    No. 6:17-CV-495-KNM, 2018 WL 9539505 (E.D. Tex. Aug. 10, 2018) ................................. 5

*Two-Way Media LLC v. AT & T Inc.*,
    636 F. Supp. 2d 527 (S.D. Tex. 2009) .................................................................... 9

*XY, LLC v. Trans Ova Genetics, LC*,
    2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .......................................................... 5

**Statutes**

28 U.S.C. § 1400(b) .................................................................................................. 4

28 U.S.C. § 1404(a) .................................................................................................. 3

**Rules**

Fed. R. Civ. P. 45(c)(1) ............................................................................................ 7

## I.    INTRODUCTION

In this case, a Florida-based plaintiff, which owns a patent whose inventor lives in New York, sued a California-based and California-incorporated defendant for selling accused products designed and engineered in California. The Western District of Texas is, unsurprisingly, not a convenient venue for such a case. The Northern District of California, however, is, and, pursuant to 28 U.S.C. § 1404(a), Defendant Apple Inc. ("Apple") respectfully requests that this Court transfer the case there.

Apple's strong ties to California, especially in and around its Cupertino headquarters, stretch back decades. Plaintiff NavBlazer, LLC's ("NavBlazer") claims target features of Apple's Maps application—including navigation, traffic, and road-closure information—that were born and bred in California. The Apple engineers who designed and developed these features are all based in California. The relevant technical documents describing these features, and the source code embodying them, are likewise in California. Third party witnesses who work with Apple on the accused features are located in California. California, in short, has multiple critical connections to this litigation.

This District, on the other hand, has no meaningful ties to this case. NavBlazer has never had any presence here—no offices, no documents, no employees, and no commercial activities. NavBlazer chose to incorporate in Florida, not Texas. Its sole employee—and the sole inventor on the patents-in-suit—chose to live in New York, not Texas. Not a single individual in Texas possesses meaningful knowledge relevant to NavBlazer's claims. And no relevant Apple documents or source code are housed in this District. Given these facts, the Northern District of California is clearly a more convenient venue in which to litigate this case than this District. Apple therefore respectfully requests the Court grant its motion to transfer.

## II.    BACKGROUND

Defendant Apple is a California corporation: it was founded in California and has been based there, in Cupertino, for more than 40 years. Rollins Decl. ¶ 3 (attached hereto at Ex. 1); Am. Compl. (Dkt. 20) ¶ 2. Apple employs more than 35,000 people who work in or around its headquarters in Cupertino. Rollins Decl. ¶ 3. Apple's primary management, research and development, and marketing personnel are in or near Cupertino. *Id.*

The engineers who research, design, and develop the accused features in this case— Apple Maps' display of information relating to traffic, routing, road conditions, and weather (collectively the "Accused Functionalities")—work in or near Cupertino. *See id.* ¶¶ 6–8; Am. Compl. ¶¶ 11, 23, 33, 36. Other relevant Apple witnesses—including marketing, licensing, and financial personnel— are also in California. Rollins Decl. ¶¶ 10–12. Apple's source code and relevant technical, marketing, and financial documents are also in California. *Id.* ¶¶ 6, 10–12.

Plaintiff NavBlazer, by contrast, is a Florida limited liability corporation with a principal place of business in West Palm Beach, Florida. Am. Compl. ¶ 1; Ex. 2 (Detail by Entity Name, Fla. Dep't of State Div. of Corps). NavBlazer appears to have just one employee—Raymond Anthony Joao, who is also the only inventor on the two patents-in-suit. Ex. 3 (U.S. Patent No. 9,075,136 ("the '136 Patent")); Ex. 4 (U.S. Patent No. 9,885,782 ("the '782 Patent")). Mr. Joao lives in Yonkers, New York. Ex. 2. NavBlazer has no known office, employees, or business in Texas. It has not registered with the Secretary of State to conduct business in Texas, nor has it appointed an agent for service of process here. Ex. 5 (Texas Taxable Entity Search).

During the time period at issue, the accused traffic, navigation, and road-closure features of Apple Maps have relied in part on data and functionality provided by a third-party, TomTom N.V. Rollins Decl. ¶ 9. TomTom employees who are knowledgeable about TomTom's

contributions to these features work and reside in California, in the Northern District. *Id.* No relevant TomTom witnesses—or other third parties—are located in Texas. *Id.*

This case is at a very early stage. NavBlazer filed its initial Complaint on February 4, 2020. (Dkt. 1.) No trial date has yet been set, and there has been no case activity beyond the filing of initial pleadings and service of preliminary infringement contentions. Apple and NavBlazer have conferred in good faith on this motion during a telephone conference on July 10. NavBlazer does not agree to transfer this case to the Northern District of California and opposes Apple's motion.

## III.   LEGAL STANDARD

A court may grant a motion to transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The "preliminary question" is whether a civil action "might have been brought" in the judicial district to which a transfer is requested. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

A series of private and public interest factors govern the remainder of the transfer analysis. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

The movant's proffered venue need only be "clearly more convenient," not "far more convenient," for transfer to be appropriate. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). By contrast, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of

venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

## IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY A MORE CONVENIENT VENUE TO LITIGATE THIS CASE THAN THIS DISTRICT

### A.   This Case Could Have Been Brought In The Northern District

As an initial matter, this case could have been brought in the Northern District of California. Apple is headquartered in Cupertino, California, within the Northern District. *See* Am. Compl. ¶ 2; Rollins Decl. ¶ 3. As any patent suit may be brought in "the judicial district where the defendant resides," 28 U.S.C. § 1400(b), venue would be proper in the Northern District.

### B.   The Private Interest Factors Favor Transfer

Apple's relevant witnesses and documents are in the Northern District. Third-party witnesses relevant to the Accused Functionalities are also in the Northern District. Meanwhile, no known relevant Apple witnesses or documents are in this District, and NavBlazer has no presence or documents here whatsoever. The private interest factors thus heavily favor transfer.

#### 1.   Relevant Sources of Proof Are In The Northern District Of California

The location of Apple's relevant sources of proof—all in the Northern District—strongly favors transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Despite advances in technology that make transfer of certain electronic files easier now than in the past, "precedent dictates the Court consider where sources of proof are physically located." *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513-ADA, Dkt. 28, 6 n.2 (W.D. Tex. Mar. 17, 2020) (Ex. 6); *see Volkswagen II*, 545 F.3d at 316.

4

All of Apple's relevant sources of proof and witnesses are located in the Northern District. The source code for Apple's accused Maps application is stored on Apple servers in the NDCA. *See* Rollins Decl. ¶ 6; *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-CV-495-KNM, 2018 WL 9539505, at *2 (E.D. Tex. Aug. 10, 2018) (concluding the sources-of-proof factor favors transfer where "specific sources of proof," including source code, were located at defendant's California headquarters). Likewise, Apple's relevant non-source code documents are in California. Here, NavBlazer has accused the navigation, traffic, road-closure, and weather features of Apple Maps of infringement. *See* Am. Compl. ¶¶ 11, 22, 33, 36. Technical documents pertaining to the design and engineering of these features are on servers and computers in California. Rollins Decl. ¶ 6. But it is not just the current location of these documents that favors transfer. "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014) (in evaluating sources-of-proof factor, "a court should also be mindful of the location of the activities surrounding the research, development, and production of the accused products"). Here, the Accused Functionalities were developed entirely in California, confirming that the access-to-proof factor favors transfer. Apart from Apple's technical documents, Apple's financial, marketing, and licensing documents are also located in California. Rollins Decl. ¶¶ 10–12. Finally, Apple's relevant witnesses—including the relevant engineers, marketing, licensing, and finance personnel—are all located in California. *Id.* ¶¶ 6–8, 10–12.

In stark contrast to the multiple sources of proof in California, there are none in this District. NavBlazer is a Florida company with no presence at all in this District. Am. Compl. ¶ 1; Ex. 2. Indeed, as far as Apple can tell NavBlazer has no offices, employees, contractors, agents,

documents, or information anywhere in the entire state. Nor do the patents-in-suit have any connection to this state: they appear to have been filed and prosecuted from New York. *See* Ex. 7 (bibliographic data sheet for the '782 Patent, listing Raymond Anthony Joao of Yonkers, NY as inventor); Ex. 8 (petition for extension of time on the '136 Patent from Mr. Joao, who is identified as both inventor and attorney of record); Ex. 9 (U.S. Patent and Trademark Office's patent practitioner record of Mr. Joao in Yonkers, NY).

Similarly, Apple has no known relevant documents or witnesses in Texas. Apple does maintain an office in Austin, and there are certainly some employees and some documents in that office. But the legally-mandated inquiry is where the documents ***relevant to this case*** are—and none of ***those*** are in Texas. Rollins Decl. ¶¶ 6, 10–12; *City of New Orleans Emps.' Ret. Sys. ex rel. BP P.L.C. v. Hayward*, 508 F. App'x 293, 297 (5th Cir. 2013) (affirming transfer of case to where "the relevant documents . . . could be found," despite presence of documents "of questionable relevance" in the transferee forum (quotations omitted)); *Volkswagen II*, 545 F.3d at 316 (analyzing only location of documents "relating to the accident" at issue). Here, importantly, Apple's documents and witnesses in Austin are not relevant to the claims or defenses in this case; all of the relevant documents and witnesses are in California. Rollins Decl. ¶¶ 6-8, 10–12.

Nor is it correct that simply because Apple's documents are stored electronically, they must be accessible in Austin. Access to Apple's source code, for instance, is tightly controlled on a need-to-know basis. Rollins Decl. ¶ 6. No Apple employees who work on the Accused Functionalities, or the source code for them, live in Texas. *Id.* ¶¶ 6–8. There is no reason the relevant code would ever be accessed from Texas—and no evidence it has been.

Given the large number of relevant sources of proof in California, and the lack of any in this District, the access-to-proof factor thus weighs strongly in favor of transfer.

## 2.   The Availability of Compulsory Process Strongly Favors Transfer

Transfer is favored where the transferee court has subpoena power over a greater number of third-party witnesses. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 316–17. Under the Federal Rules of Civil Procedure, a subpoena may compel an individual to testify at trial or in a deposition only "within the state" or "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B).

Here, the Northern District has subpoena power over several relevant witnesses, and this District does not. TomTom, a third party, has provided and continues to provide data and functionality used in the accused features of Apple Maps. *See* Rollins Decl. ¶ 9. TomTom employees with knowledge of this data and functionality, including Relationship Managers Dimpy Shah and Andrea Stucchi and Product Manager Shashi Vaijayanthi Rangarajan, are all located in Silicon Valley, in California. *Id.* These witnesses are within the absolute subpoena power of the Northern District courts, but not of this Court. Fed. R. Civ. P. 45(c)(1).

Conversely, so far as Apple is aware, there are no relevant third-party witnesses within the subpoena power of this Court. For example, Apple employees who work on the Accused Functionalities have no contact with any TomTom employees who may be located in Texas. Rollins Decl. ¶ 9. The compulsory-process factor thus strongly favors transfer.

## 3.   Convenience of Both Party and Non-Party Witnesses Favors Transfer

The convenience and cost of attendance to the relevant witnesses is the most important factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1343. "[C]ourts consider the convenience of both party and non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875 (E.D. Tex. 2013). Of the party witnesses, the Apple employees who work on relevant aspects of the Accused Functionalities are located in the Northern District. For example, each of

the following Apple employees works in the Northern District and has information relevant to this case; none works in Texas, and none works with anyone in Texas (Rollins Decl. ¶¶ 7–8, 10–12):

- **Donna Pitteri** is a Manager at Apple who oversees engineers who code and design Apple Maps' navigation, routing, and traffic functions. Rollins Decl. ¶ 7. Except for a small number of individuals located in Zurich, Switzerland, Ms. Pitteri and her entire team work in the Northern District. *Id.*

- **Christopher Tremblay** is a Software Engineering Manager for Apple's Maps Client organization, which is responsible for coding and maintaining the Maps application itself. *Id.* ¶ 8. Mr. Tremblay and his team are all based in the Northern District, except for three engineers located in Australia or Germany. *Id.*

- **David Dorn** is an Apple marketing employee who is knowledgeable about the marketing of the Accused Produces and of any Apple products that use the Accused Functionalities. *Id.* ¶ 11. Mr. Dorn works in the Northern District. *Id.*

- **Jayna Whitt** is a Director of Intellectual Property Transactions at Apple who is knowledgeable about the licensing of Apple's intellectual property. *Id.* ¶ 10. Ms. Whitt is located in the Northern District. *Id.*

- **Mark Rollins** is an Apple finance employee who has information about the sales and financing of the Accused Products and the Accused Functionalities. *Id.* ¶ 12. Mr. Rollins is located in the Northern District. *Id.*

For each of these witnesses, it would be significantly more convenient to attend trial in California than in Texas. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Here, the federal courthouse in Waco, Texas is at least 1,700 miles from any federal courthouse in the NDCA. Ex. 10 at 2–5 (Witness Travel Times to Waco & NDCA.) It would take Apple witnesses leaving Apple's Cupertino headquarters a mere 15 minutes by car to reach the federal courthouse in San Jose, and less than an hour to reach the courthouses in either San Francisco or Oakland. *Id.* at 6–11. Apple witnesses traveling to Waco, on the other hand, would face a 3.5-hour flight from either San Francisco or San Jose to Dallas. *Id.* at 12–13. The witnesses

would then embark on either a 40-minute connecting flight to Waco or a one hour, forty-minute trip by car to the Waco courthouse. *Id.* at 14–16. These differences confirm the Fifth Circuit's "obvious conclusion" "that it is more convenient for witnesses to testify at home:" "'Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 205).

Further, the convenience of Apple's witnesses cannot be discounted simply because they are employed by a party. "[N]either the Fifth Circuit nor the Federal Circuit has adopted or commented on [a] distinction" between party and non-party witnesses. *Two-Way Media LLC v. AT & T Inc.*, 636 F. Supp. 2d 527, 538 (S.D. Tex. 2009) (rejecting argument that convenience of non-party witnesses be afforded greater weight); *e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (considering the "substantial number of party witnesses" as favoring transfer). The location of Apple's witnesses weighs—and weighs heavily—in favor of transfer.

The NDCA is also clearly more convenient for key non-party witnesses. TomTom, a third party, has provided and continues to provide data and functionality used in the Accused Functionalities of Apple Maps. *See* Rollins Decl. ¶ 9. TomTom employees who have knowledge of the data and functionality TomTom has provided to Apple are located in Silicon Valley, in California. *Id.* In contrast, none of the TomTom employees who interact with Apple regarding the accused features are located in Texas. *Id.*

Finally, there are no relevant witnesses for whom trial in this District would be more convenient. NavBlazer has no witnesses—let alone relevant ones—here. Its sole listed member, who doubles as the only listed inventor of the '782 and '136 Patents, lives in Yonkers, New York. Ex. 2. It would take this individual about six hours to reach San Francisco International Airport in

the NDCA via a direct flight, about as much as it would take him (at the fastest) to get to Waco through available connecting flights. Ex. 10 at 17–18. Nor is it relevant that Yonkers is fewer miles from Waco than from San Francisco. Where some witnesses are closer to the transferor court but "will be required to travel a significant distance no matter where they testify," and "there are a substantial number of witnesses residing within the transferee venue," witness convenience favors transfer. *In re Genentech*, 566 F.3d at 1344.

Similarly, no known third parties with relevant information are located in this District. Nor could any Apple employees in the WDTX provide relevant testimony, as no Apple employee who is responsible for the design, engineering, or development of the Accused Functionalities lives in this District. *See* Rollins Decl. ¶ 6. Although Apple has an Austin office, as a legal matter, that cannot somehow balance out Apple's California witnesses under the witness-convenience prong. The question is not whether Apple has employees in Texas—it is whether any of those witnesses have **"*relevant and material*"** information. *In re Genentech*, 566 F.3d at 1343 (emphasis added). Because the evidence here shows that they do not, *see* Rollins Decl. ¶¶ 6–8, 10–13, Apple's Austin presence has little, if any, weight.

Taken together, the Northern District would be significantly more convenient for both Apple's and relevant third-party witnesses. The witness-convenience factor thus strongly counsels in favor of transfer.

### 4.   Other Practical Problems Associated with Trial of This Case Are Neutral

No "other practical problems" exist in this case that would make trial more "easy, expeditious and inexpensive" in either the NDCA or the WDTX. *Volkswagen I*, 371 F.3d at 203. This case is in its earliest stages. No scheduling conference has taken place, no trial date has been set, and no activity has occurred other than the filing of initial pleadings and service of preliminary

infringement contentions. (Dkt. 21.) In short, transfer would not present a significant challenge to either party or to courts in either District.

Although NavBlazer has sued other defendants over the patents-in-suit here, the mere presence of co-pending litigation alone does not weigh against transfer, especially when the cases share a "limited relationship" with one another and the proposed transferee district is "where most of the identified witnesses reside and where the other convenience factors clearly favor." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). "To hold otherwise, [the Court] would be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district. This is not the law under the Fifth Circuit." *In re Google Inc.*, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017).

NavBlazer's other lawsuits in this District involve three different defendants (LG, Samsung, and Motorola), which each manufacture different mobile devices with different features. *See, e.g.*, Compl. ¶ 22, *NavBlazer, LLC v. Motorola Mobility LLC*, 6:20-cv-00100 (Dkt. 1) (Ex. 11); Compl. ¶ 22, *NavBlazer, LLC v. LG Electronics, Inc.*, 6:20-cv-00095 (Dkt. 1) (Ex. 12); Compl. ¶ 22, *NavBlazer, LLC v. Samsung Elecs. Co., Ltd.*, 6:20-cv-00089 (Dkt. 1) (Ex. 13). No other defendants make or sell the accused iPhone or iPads, run the accused iOS operating system, or sell the accused Apple Maps application. In fact, in its other cases, NavBlazer accuses Google Maps, which runs on the Android operating system, of infringing. *See, e.g.*, Ex. 11 (Motorola) ¶¶ 24–25; Ex. 12 (LG) ¶¶ 24–25; Ex. 13 (Samsung) ¶¶ 24–25. NavBlazer's other lawsuits thus involve different software, running on a different operating system, which itself runs on different hardware. As a result, "it is likely that these cases will result in significantly different discovery, evidence,

proceedings, and trial." *In re Zimmer Holdings, Inc.*, 609 F.3d at 1382.[1] For all these reasons, the other-practical-problems factor is neutral.

### C.     The Public Interest Factors Favor Transfer

Apple's deep roots in California, where all the Accused Products and Accused Functionalities were developed, showcases California's strong interest in having this case litigated there. The remaining public interest factors are either neutral or should be given little weight.

### 1.   California Has A Strong Local Interest In The Accused Functionalities

This case demonstrates California's strong "local interest in having localized interests decided at home." *Volkswagen I*, 371 F.3d at 203. Apple was founded in California and has been embedded within the Northern District for more than 40 years. Rollins Decl. ¶ 3. Apple employs more than 35,000 people in the Northern District. *Id.* Apple does substantial business developing and marketing its products out of its California headquarters. *Id.* California thus has a strong interest in having this case, involving its residents and one of its corporate citizens, tried there. *See, e.g.*, *Gemalto S.A. v. CPI Card Grp. Inc.*, 2015 WL 10818740, at *5 (W.D. Tex. Dec. 16, 2015) (finding strong local interest in Colorado, where defendant was headquartered and conducted substantial business).

In addition, the local-interest factor favors transfer because the Apple employees who had a hand in devising, coding, launching, and marketing Apple Maps work in California, not Texas. *See supra* at 7–8 (listing relevant Apple employees); Rollins Decl. ¶¶ 6–8, 10–12. NavBlazer's infringement allegations, targeting Apple Maps, thus "call into question the reputation of

---

[1] NavBlazer cannot complain that its suits may be litigated in multiple Districts. NavBlazer itself chose to file a suit asserting the same patents against yet another defendant in a different District. *See NavBlazer, LLC v. Hyundai Motor America*, No. 2:20-cv-00072 (E.D. Tex.). That case, though now settled, is proof positive that NavBlazer has no vested interest in judicial economy.

individuals that work in the [California] community." *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at \*6 (E.D. Tex. Jan. 14, 2013) (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336). Although Apple has some offices in this District, the fact that the ***relevant*** Apple employees are in California, not Texas, creates a strong local interest in the NDCA. *In re Acer*, 626 F.3d at 1256 (favoring transfer to where "events that gave rise to a suit" occurred); *see, e.g.*, *Am. GNC Corp. v. GoPro, Inc.*, 2018 WL 6074395, at \*21 (S.D. Cal. Nov. 6, 2018) (finding the NDCA, where the allegedly infringing products were designed, "clearly has the stronger interest as to GoPro" despite GoPro offices in the transferor district); *ORD Structure Innovations, LLC v. Oracle Corp.*, 2011 WL 4435667, at \*4 (N.D. Ill. Sept. 22, 2011) (finding local interest of the NDCA favored transfer because "the majority of the accused products were developed in Northern California, and Oracle is headquartered there," even though Oracle "has offices within this district").

The local-interest factor especially favors transfer because NavBlazer has literally no connection to this District. It employs no Texans, owns no Texas land, has no Texas office, and conducts no business or commerce in Texas. Not only did NavBlazer affirmatively choose not to incorporate in Texas—it chose not to register to conduct business here or to designate an agent for service of process here. There is, thus, no local interest in having this case decided in Texas.

## 2.   Administrative Difficulties Flowing From Court Congestion Are Neutral And Should Be Given Little Weight

The Court may also consider "the administrative difficulties flowing from court congestion" in deciding a transfer motion. *Volkswagen II*, 545 F.3d at 315. However, the Fifth Circuit has found that "this factor appears to be the most speculative," and when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

In this case, this factor should be given little weight. The Northern District and this District had essentially the same median times to disposing of civil cases by court action in the last full calendar year. Ex. 14 (U.S. Courts, Statistics & Reports, Table C-5 (Dec. 31, 2019).) This District's median time to disposition by court action before trial (7 months) was essentially the same as the Northern District's (8 months), and the Northern District had faster median disposition times during or after pretrial (13.3 months in the NDCA versus 14.2 months in the WDTX) and during trial (25.0 months in the NDCA versus 25.5 months in the WDTX). *Id.* While significantly more cases commenced in 2019 in the Northern District (8,278) than in this District (4,181), nearly twice as many private civil cases terminated in the Northern District (6,139) as in this District (3,280) as well. Ex. 15 (U.S. Courts, Statistics & Reports, Table C-1 (Dec. 31, 2019).) Both Districts are keeping pace with their respective workloads, while some measures show the Northern District reaches speedier resolutions.

Further, courts in the Northern District also often set trial schedules resembling those preferred by this Court. This Court's standing order governing patent cases schedules trial approximately 18 months after the Rule 16 Case Management Conference ("CMC"). Ex. 16 (Order Governing Proceedings – Patent Cases). Recent scheduling orders from NDCA Courts set similar schedules. *See, e.g.*, *Fluidigm Corp. v. Ionpath, Inc.*, 3:19-CV-05639, Dkt. 44 (N.D.C.A. Jan. 23, 2020) (Ex. 17), Dkt. 72 (Apr. 16, 2020) (Ex. 18) (setting trial date less than 17 months after CMC); *UPF Innovations, LLC v. Intrinsic ID, Inc.*, 3:19-CV-02711, Dkt. 37 (N.D.C.A. Oct. 9, 2019) (Ex. 19) (setting trial date less than 17 months after filing); *In Re: PersonalWeb Tech., LLC*, 5:18-MD-02834, Dkt. 116 (N.D.C.A. Sept. 21, 2018) (Ex. 20), Dkt. 374 (Mar. 1, 2019) (Ex. 21) (less than 18 months between initial CMC and trial date, with initial CMC held less than 4 months after MDL consolidation).

14

The Northern District and this District exhibit little difference in any factor relative to court congestion or their abilities to expeditiously process cases. As this appears to be the most nebulous of the relevant factors, *In re Genentech*, 566 F.3d at 1347, it should be considered neutral.

### 3. The Remaining Public-Interest Factors Are Neutral

The other two public-interest factors—familiarity with the governing law and avoiding conflict-of-law problems—are neutral. *See Volkswagen I*, 371 F.3d at 203. As between the NDCA and the WDTX, "neither district has a demonstrated advantage in applying federal patent law." *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014). Nor would this case implicate a conflict of law. These remaining factors are therefore neutral.

## V.    CONCLUSION

The Northern District of California is clearly more convenient than this District to litigate this case. All relevant witnesses and sources of proof are in the Northern District. The Northern District has absolute subpoena power over third-party witnesses who would otherwise be unlikely to testify if this case were tried here. California has a strong local interest in adjudicating claims concerning technologies that were designed and there by a company that has been based there for the better part of a half-century. This District, meanwhile, possesses none of these qualities. As this case "feature[es] most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009), Apple requests the Court grant its motion to transfer.

Date: July 15, 2020                          Respectfully submitted,

                                             By:   _/s/ Michael Pieja_____

                                             Michael Pieja (*Pro Hac Vice*)
                                             California State Bar No. 250351
                                             Alan Littmann (*Pro Hac Vice*)
                                             Illinois State Bar No. 6283389
                                             Doug Winnard (*Pro Hac Vice*)
                                             California State Bar No. 275420
                                             Samuel E. Schoenburg (*Pro Hac Vice*)
                                             Illinois State Bar No. 6327565
                                             GOLDMAN ISMAIL TOMASELLI
                                               BRENNAN & BAUM LLP
                                             200 S. Wacker Dr., 22nd Floor
                                             Chicago, Illinois 60606
                                             Tel: (312) 881-5954
                                             Tel: (312) 881-5969
                                             Tel: (312) 881-5944
                                             Tel: (312) 881-5173
                                             Email: mpieja@goldmanismail.com
                                             Email: alittmann@goldmanismail.com
                                             Email: dwinnard@goldmanismail.com
                                             Email: sschoenburg@goldmanismail.com

                                             J. Stephen Ravel
                                             Texas State Bar No. 1658497
                                             KELLY HART & HALLMAN LLP
                                             303 Colorado, Suite 2000
                                             Austin, Texas 78701
                                             Tel: (512) 495-6429
                                             Email: steve.ravel@kellyhart.com

                                             **Attorneys for Defendant APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **DEFENDANT APPLE INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA** via the Court's CM/ECF system per Local Civil Rule CV-5(b)(1) on July 15, 2020.

*/s/ Michael Pieja*
Michael Pieja